UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

PERRIGO COMPANY PLC,

    Plaintiff,

v.

ROBERT HOLZ,

    Defendant.

No. _____

Hon. _____

**Complaint and Demand for Jury Trial**

## COMPLAINT

Plaintiff Perrigo Company PLC states its Complaint against Defendant Robert Holz as follows:

## PARTIES

1. Plaintiff Perrigo Company PLC ("**Perrigo**") is an Irish corporation with its principal place of business at 515 Eastern Avenue, Allegan, Michigan 49010.

2. On information and belief, Defendant Robert Holz ("**Holz**") is an individual residing at 591 General Scott Road, Wayne, PA 19087.

## JURISDICTION & VENUE

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because complete diversity of citizenship exists between Perrigo and Holz and the amount in controversy exceeds $75,000, exclusive of costs, interest, and attorneys' fees.

4. This Court has personal jurisdiction over Holz. Holz had substantial business contacts with Perrigo in Michigan, was paid his salary and all benefits from Michigan, and signed several agreements with Perrigo that are governed by Michigan law. Much of the confidential information at issue in this case was generated in Michigan, and Holz's contacts with Perrigo's corporate leadership in Michigan formed the basis for Holz's obtaining that confidential information. Moreover, Holz's job duties involving that confidential information bound Perrigo to obligations in Michigan.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because this judicial district has a substantial connection to Perrigo's claims.

## FACTS

**Perrigo**

6. Perrigo is one of the world's leading manufacturers of prescription and over-the-counter pharmaceuticals. Perrigo is also a world leader in branded and private-label non-pharmaceutical self-care products.

7. Among the various non-pharmaceutical products Perrigo manufactures are infant, toddler, and pediatric nutritional products, including infant formula. Perrigo manufactures those pediatric nutritional products in the United States for several different store brands. It also formulates, manufactures, and packages infant formula for customers who export those products to various markets around the world.

**Holz Begins Work for Perrigo and Signs a Confidentiality Agreement**

8. In September of 2010, Perrigo hired Holz as its Vice President for Europe, Middle East, and Africa Operations.

9.     As a condition of employment, Holz signed a Confidentiality Agreement.  (*See generally* Ex. A, Confidentiality Agreement.)  The Confidentiality Agreement is governed by Michigan Law.  (*Id.* § (5)(d).)

10.    The Confidentiality Agreement defines Perrigo's "Confidential Information" as "all information regarding the business of Perrigo and its subsidiaries and affiliated companies that [Holz] aquire[d] in the course of [his] employment with Perrigo which has not been made generally known to the public."  (*Id.* § (2)(a).)

11.    The Confidentiality Agreement then provides some nonexclusive examples of Confidential Information, "including, but not limited to, information concerning Perrigo's . . . product formulae, process and method specifications, . . . marketing activities, customer lists, cost and pricing data, [and] business plans."  (*Id.*)

12.    By signing the Confidentiality Agreement, Holz agreed that he would "not, without Perrigo's prior written consent, disclose to anyone outside Perrigo nor use in any way other than in Perrigo's business interest as authorized by Perrigo, any of Perrigo's Confidential Information . . . ."  (*Id.* § (2)(b).)

13.    Holz agreed that the obligations of the Confidentiality Agreement would continue after the termination of his employment with Perrigo.  (*Id.*)

**Holz Spends Seven Years as a High-Level Perrigo Employee**

14.    Perrigo is a leading supplier of store-brand infant, toddler, and pediatric nutrition products.  Those products include infant and toddler formulas.

15.    Perrigo also formulates and manufactures infant formula for customers who then brand the formula and export it to various foreign markets.

16.    In September of 2013, Holz was promoted to Vice President for Commercial Operations – International Nutrition.

17. As VP for Commercial Operations – International Nutrition, Holz was responsible for Perrigo's international infant nutrition commercial activities.

18. Holz managed Perrigo's sales of infant formula to customers, who then exported the formula to foreign markets, including China. Holz's work for Perrigo included vetting prospective customers, and negotiating supply agreements with those customers.

**Holz Gains Confidential Information About Perrigo's Business Strategy and Contracting Strategy**

19. As Perrigo's VP for Commercial Operations – International Nutrition, Holz handled a wealth of Perrigo's Confidential Information. That Confidential Information includes but is not limited to Perrigo's contract negotiation strategy and its strategy regarding the management of Perrigo's customers who exported baby formula to China.

20. In or around 2016, Quality of Life Brands ("**QLB**") approached Perrigo to formulate, manufacture, and package infant formula for QLB.

21. QLB planned to export that infant formula for sale in China.

22. Holz personally assisted in negotiating the supply agreement between Perrigo and QLB, with knowledge of Perrigo's confidential information regarding Perrigo's contracts with other customers and their formulations and future plans in China, which impacted the terms and performance of the supply agreement.

23. The supply agreement between Perrigo and QLB required QLB to purchase a certain volume of infant formula from Perrigo. QLB failed to meet that volume requirement in 2017.

24. Before Holz left Perrigo, the company internally discussed terminating the QLB supply agreement. Holz was directly privy to these high-level discussions of Perrigo's strategy regarding the termination of the supply agreement he helped negotiate with QLB. Holz was also

4

informed of Perrigo's broader strategy for managing its customers that exported infant formula to China.

25. Before Holz left Perrigo, he was notified that QLB was not among the customers for which Perrigo would continue to supply infant formula for import to China.

26. Holz was aware that Perrigo would terminate the QLB supply contract before he left Perrigo on July 1, 2017.

**Holz Accepts an Early Retirement from Perrigo**

27. In early 2017, Holz elected to participate in the Perrigo PLC U.S. Voluntary Early Retirement Incentive Program 2017.  As a result, Holz became eligible to receive severance pay and severance benefits under the Perrigo U.S. Severance Policy (the "**Severance Policy**").

28. In order to be eligible to receive any severance pay or severance benefits under the Voluntary Early Retirement Incentive Program and the Severance Policy, Holz was required to enter into a Waiver and Release Agreement (the "**Early Retirement Agreement**").

29. On July 1, 2017, Holz and Perrigo entered into the Early Retirement Agreement. (Ex. B, Early Retirement Agreement.)  The Early Retirement Agreement is governed by Michigan law.  (*Id.* ¶ 14.)  Perrigo administers employee retirement benefits from Michigan.

30. In the Early Retirement Agreement, Holz agreed to continue to abide by the terms of his existing Confidentiality Agreement.  (*Id.* ¶ 4.)  In fact, the Confidentiality Agreement was incorporated in its entirety into the Early Retirement Agreement, (*id.*), and the Severance Policy adopts the Confidentiality Agreement's definition of Confidential Information.

31. Holz further agreed to comply with the confidentiality provisions contained in the Severance Policy.  (*Id.* at ¶ 4.)

32. The Severance Policy requires that Holz would "not, during or at any time after his/her termination of employment with [Perrigo] and its Affiliates, use, divulge, or convey to others any Confidential Information."

33. The confidentiality provisions of both the original Confidentiality Agreement and the Severance Policy continue after the termination of Holz's employment with Perrigo.

34. In exchange for Holz's promise to continue to abide by the terms of his Confidentiality Agreement and the Confidential Information covenants in the Severance Policy, Perrigo provided Holz with the promised severance payments and severance benefits. The severance pay came in the form of two payments totaling $310,030.32.

35. The two severance payments were made to Holz on July 31, 2017 and March 9, 2018. The payments were funded from Perrigo's treasury department in Michigan.

36. In addition to severance pay, Holz received severance benefits under the terms of the Severance Policy.

37. Throughout his employment with Perrigo, Holz participated in Perrigo's Long-Term Incentive Plan.

38. The Long-Term Incentive Plan allows Perrigo employees to receive Restricted Stock Units ("**RSUs**"), which are then exchanged for shares of Perrigo common stock or cash upon a pre-determined vesting date. The Long-Term Incentive Plan is governed by Michigan Law.

39. Holz received several awards of RSUs from Perrigo.

40. Solely because Holz entered into the Early Retirement Agreement, he was treated as a retired employee for purposes of Perrigo's Long Term Incentive Plan. That treatment is considered a severance benefit under the Severance Policy.

41. Because Holz was treated as a retired employee, his RSUs vested—and were converted to Perrigo common stock—immediately upon his departure from Perrigo in July of 2017, instead of their original vesting date, which would have been well after Holz left Perrigo. At the time, the converted RSUs had a net value of $136,463.58.

42. The Early Retirement Agreement establishes that Perrigo may pursue all available legal or equitable remedies to recover any damages suffered as the result of Holz's breach. (Ex. B, Early Retirement Agreement ¶ 13.)

43. The Severance Policy also states that Perrigo may pursue any remedy permissible by law relating specifically to a breach of the confidentiality obligations in the Severance Policy.

**Holz Breaches His Confidentiality Obligations**

44. By November 2017—just months after signing the Early Retirement Agreement and receiving severance payments and benefits from Perrigo—Holz pitched himself to work as a consultant for QLB.

45. On December 1, 2017, Perrigo informed QLB that it was terminating the supply agreement, which QLB disputed.

46. QLB and Perrigo then entered into discussions regarding a potential resolution to their dispute under the supply agreement.

47. During this November and December 2017 time-frame, Holz was in regular contact with QLB as a consultant. Throughout that time, he used and revealed to QLB a treasure trove of Perrigo Confidential Information to benefit QLB in its relationship with Perrigo in direct violation of his confidentiality obligations to Perrigo under his Confidentiality Agreement and Early Retirement Agreement. The Perrigo Confidential Information Holz shared with QLB includes, but is not limited to:

    a.    the number of infant formula brands Perrigo would continue to manufacture for the Chinese market;

    b.    the name of Perrigo's ongoing customers of infant formula for the Chinese market;

    c.    the number of formulations of infant formula Perrigo would continue to manufacture for the Chinese market;

    d.    the names of the specific formulation of infant formula Perrigo would continue to manufacture for sale in China;

    e.    Perrigo's strategy to address its supply-agreement dispute with QLB;

    f.    Perrigo's strategy for complying with Chinese import regulations; and

    g.    Perrigo's internal staffing, personnel moves, and business strategy.

48. Holz also advised QLB regarding its dispute with Perrigo under the very supply agreement he helped negotiate.

49. Holz advised QLB with the express purpose of helping QLB maximize its potential claim against Perrigo.

50. To that end, Holz recommended to QLB the specific disputes it could raise with Perrigo under the supply agreement. He also advised QLB on Perrigo's likely internal response in light of the dispute over the supply agreement.

51. QLB ultimately sued Perrigo over the supply agreement dispute, relying in part on the confidential information that Holz had shared with QLB.

52. The confidentiality provisions of Holz's Confidentiality Agreement and his Early Retirement Agreement were in effect at all times during his use of and disclosures to QLB of Perrigo Confidential Information.

## COUNT I
## Breach of Contract (Early Retirement Agreement)

53. Perrigo incorporates and re-alleges all prior allegations as though fully set forth herein.

54. Perrigo and Holz executed and are parties to the Early Retirement Agreement, which is a valid, enforceable, and binding contract.

55. Perrigo performed under the terms of the Early Retirement Agreement.

56. Holz breached the Early Retirement Agreement by using Perrigo's Confidential Information and disclosing it to QLB.

57. As a direct result of Holz's breach, Perrigo has suffered damages at minimum of $436,494.00.

## Relief Requested

WHEREFORE, Perrigo respectfully requests that the Court enter judgment in its favor against Robert Holz as follows:

A. Judgment that Holz breached the Early Retirement Agreement;

B. Award damages in an amount to be proved at trial, totaling or exceeding $436,494.00.

C. Grant such other legal and equitable relief as the Court deems just and proper.

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.


Dated:  July 8, 2020          */s/ Edward J. Bardelli*
                              Edward J. Bardelli (P53849)
                              Paul H. Beach (P82036)
                              WARNER NORCROSS + JUDD LLP
                              1500 Warner Building
                              150 Ottawa Avenue NW
                              Grand Rapids, MI 49503
                              616.752.2000
                              ebardelli@wnj.com
                              pbeach@wnj.com

                              Attorneys for Plaintiff

20239430