# <u>Exhibit B</u>

**PERRIGO COMPANY CONFIDENTIAL WAIVER AND RELEASE AGREEMENT**
**FOR U.S. EMPLOYEES ELECTING TO PARTICIPATE IN THE VOLUNTARY EARLY**
**RETIREMENT INCENTIVE PROGRAM 2017**

This U.S. Waiver and Release Agreement ("the Agreement") is entered into by and between Perrigo Company plc ("the Company"), and **Bob Holz** ("Employee").

1.      **Final Day of Employment.** Employee's final day of employment with the Company is **June 30, 2017** (the "Retirement Date").

2.      **General Release.**  In full consideration of Employee meeting the Conditions of Eligibility of the Perrigo Company plc U.S. Voluntary Early Retirement Incentive Program 2017 (the "Program") and for the Severance Pay and Severance Benefits to be provided to Employee under the Program and according to the payment schedule contained in the Program and the Perrigo Company PLC U.S. Severance Plan Amended and Restated Effective February 6, 2017 (the "Policy"), Employee voluntarily and knowingly releases and discharges the Company, its parents, subsidiaries and Affiliates, and their respective officers, directors, shareholders, employees, subsidiaries, divisions, parent companies, employee benefit plans and fiduciaries, both past and present (the "Released Parties"), from any and all claims, debts, suits or causes of action, known or unknown, based upon any fact, circumstance, or event occurring or existing at or prior to the Eligible Employee's execution of the Waiver and Release Agreement, including, but not limited to, any claims or actions arising out of or during the Eligible Employee's employment with the Company and/or separation of employment, including any claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., as amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 301 et seq., as amended, the Older Workers Benefit Protection Act, 29 U.S.C. § 621 et seq., the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., the Civil Rights Act and any and all other federal, state or local laws, and any common law claims now or hereafter recognized.  In no event will the Waiver and Release Agreement restrict the Eligible Employee's ability to engage in competition with the Company or its Affiliates (or with any successor to the Company and its Affiliates).  "Affiliate" means any member of the group of corporations, trades or businesses or other organizations compromising the "controlled group" with the Company.

3.      **Exclusions from General Release**.  Excluded from the General Release above are any claims or rights which cannot be waived by law, including Employee's right, if any, to workers' compensation benefits (although Employee represents that Employee has reported all work-related injuries or illnesses, if any, that Employee suffered or sustained during employment with the Company), unemployment insurance benefits, or vested rights under any retirement plan.  Employee understands that excluded from the General Release is the right to file an administrative charge of discrimination (or similar charge) or to participate in any other type of state or federal investigation. However, by signing this Agreement Employee agrees that he/she is waiving any right to monetary recovery, injunctive relief, or reinstatement in connection with any such charge or investigation.

4.      **Confidential Information, Intellectual Property, and Company Property**.  Employee agrees to continue to abide by the terms and conditions of the Confidentiality Agreement entered into by her/him with the Company that is incorporated in its entirety into this Agreement by reference as well as the Confidential Information covenants in Article X of the Policy.

5.      **Return of Corporate Property and Records.**  Employee agrees to return to the Company, on or before commencement of payment of the severance, all of the Company's property in

Employee's possession or control and all books, records, files, notes, pricing information, customer lists and other data and information pertaining to the business of the Company in any format, delivered to or obtained by Employee or otherwise developed by Employee in connection with the performance of duties as an employee of the Company and Employee further agrees to retain no copies of any such materials in Employee's possession or control.

6. **Ownership of Claims**. Employee represents that Employee has not transferred or assigned, or purported to transfer or assign, to any person or entity, any claim described in this Agreement. Employee further agrees to indemnify and hold harmless the Company against any and all claims based upon, arising out of, or in any way connected with any such actual or purported transfer or assignment.

7. **Employee Acknowledgements**. Employee further agrees that Employee (a) has accurately reported all hours worked and has been paid for all hours worked, including overtime; and (b) is not aware of any job injury or illness for which Employee has not already filed a claim. Employee represents that Employee has not filed any action, claim, charge, or complaint against the Company with any local, state, or federal agency or court.

8. **Complete Defense**. Employee understands and agrees that this Agreement may be pled as a complete defense to and provides the basis for summary dismissal of any claim or entitlement released and waived by this Agreement which may be asserted in any suit or claim by the Employee against the Company, or those persons or entities released in this Agreement.

9. **Cooperation.** Employee agrees that upon request by the Company to cooperate with the Company in any investigation or litigation. Employee shall also be available to the Company for any meetings or conferences the Company deems necessary in preparation for the defense or prosecution of any such proceedings. The Company shall reimburse Employee for any actual costs and expenses reasonably incurred by Employee while Employee's services are being utilized by the Company pursuant to this Section.

10. **Non-disparagement and Non-contact.** Employee shall not, in any manner, publicly or privately (including through social media), disparage or impugn the reputation or character of the Company, including its management, products and services. This covenant shall not be construed to interfere with Employee's enforcement of this Agreement, pursuit of legal rights or claims not covered by the General Release in this Agreement, or ability to testify truthfully under oath pursuant to a subpoena, other legal process, or government investigation.

11. **Re-employment.** Should Employee seek re-employment, Employee agrees that neither the Company, nor any entity affiliated with it, nor any successor to it, is under any obligation to consider Employee for such re-employment.

12. **Miscellaneous.** In the event of Employee's death, this Agreement is personal to and non-assignable by Employee but is binding upon Employee's heirs and estate and the Employee's estate shall be entitled to the continued payment of any severance benefits remaining under Article V of the Policy. This Agreement is assignable by and is binding upon the Company's successors and assigns but such assignment shall not relieve the Company of its obligations hereunder. This Agreement is the entire agreement between the parties regarding Employee's termination of employment with the Company and supersedes all prior agreements and understandings between the parties with respect to the subject matter of this Agreement, except as specifically noted in this Agreement. No modification of this Agreement shall be valid unless it is in writing and signed by both parties. This Agreement in no way shall be construed as an admission by the Company that it acted wrongfully toward Employee or that Employee

has any rights against the Company for any wrongful action. If any part of this Agreement is found to be unenforceable, the other provisions shall remain fully valid and enforceable.

**13.** **Default.** In the event of default by Employee in complying with the terms of this Agreement and those incorporated by reference, as a partial remedy to the Company, the Company shall have the right to terminate payment of any Severance Pay and Severance Benefits owing to or that may become owing to Employee under the Policy, provided that Employee receives at least $10,000, which is attributable to his or her waiver of any ADEA claims, which remaining amounts shall be fully and irrevocably forfeited, and pursue (i) such legal remedies as may be available to it to recover from Employee any damages suffered by the Company as a result of such default, and/or (ii) an appropriate action in equity, including an action for injunctive relief, as may be appropriate under the circumstances to protect itself against such default. Regardless of any default rights exercised by the Company under this Section of this Agreement, the Agreement itself shall continue to be in full force and effect and be fully binding on Employee. Employee acknowledges that the existence of any claim or cause of action against the Company by Employee, whether predicated upon this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of the restrictions and provisions contained in this Agreement.

**14.** **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed under applicable federal law and in the event reference shall be made to state law, the internal laws of the State of Michigan shall apply, without regard to choice of law principles.

**15.** **Acknowledgements.** In signing this Agreement, Employee acknowledges that:

(a) The Company has not provided Employee with any tax advice, and Employee is solely responsible for the tax consequences of compensation provided under this Agreement or under any Company benefit plan;

(b) Employee has signed this Agreement voluntarily and knowingly in exchange for the consideration described in this Agreement, the Program, and the Policy, which Employee acknowledges as adequate and satisfactory and beyond that to which Employee is otherwise entitled;

(c) Employee is advised by the Company to consult with an attorney before signing this Agreement;

(d) Employee has at least forty five (45) days in which to consider the Agreement and that Employee has signed on the date indicated below after concluding that this Agreement is satisfactory;

(e) Employee has been provided access to **ERI Program SharePoint site** which provides information about those eligible to participate in the separation pay and benefits Program and those who are not (by job title, and age); and has been informed that a hard copy list of this information is available upon request to Human Resources;

(f) Employee is advised by the Company that this Agreement shall not become effective or enforceable until seven (7) days or fifteen (15) days in Minnesota after Employee's execution of this Agreement, provided that the Agreement is not timely revoked in accordance with this paragraph. Employee also understands that Employee may revoke this Agreement during the seven (7) days or fifteen (15) days in Minnesota period. To be effective, Employee's revocation must be in writing and delivered to Bryan Rojek, Vice President, Global Total Rewards, Human Resources Department, 515 Eastern Ave., Allegan, Michigan 49010 within the seven (7) day or fifteen (15) days in Minnesota revocation period. Employee understands that seven (7) days or fifteen (15) days in Minnesota after

Employee's execution of this Agreement, this Agreement will become effective and enforceable without any further affirmative action by either Employee or the Company;

      (g)     that neither the Company nor any of its agents, representatives, employees, or attorneys, have made any representations to Employee concerning the terms or effects of this Agreement other than those contained in this Agreement; and

      (h)     Employee has received a copy of the Program and had electronic access to the Perrigo Company plc U.S. Severance Policy Amended and Restated Effective February 6, 2017 and the ability to request a printed copy.

I have read this Perrigo Company Confidential Waiver and Release Agreement for U.S. Employees Electing to Participate in the Voluntary Early Retirement Incentive Program 2017 and I understand all of its terms. I enter into and sign this Perrigo Company Confidential Waiver and Release Agreement for U.S. Employees Electing to Participate in the Voluntary Early Retirement Incentive Program 2017 knowingly and voluntarily, with full knowledge of what it means.

Date: JULY 1, 2017

[Insert employee name] BOB HOLZ

PLEASE RETURN TO:

Bryan Rojek
Vice President of Global Total Rewards
Human Resources Department
Perrigo Company plc
515 Eastern Avenue
Allegan, MI  49010
bryan.rojek@perrigo.com