UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

_____

PERRIGO COMPANY PLC,

      Plaintiff,

v.

ROBERT HOLZ,

      Defendant.

Case No. 1:20-cv-612
Honorable Hala Y. Jarbou

| | |
|---|---|
| Edward J. Bardelli (P53849)<br>WARNER NORCROSS + JUDD LLP<br>Attorneys for Plaintiff<br>1500 Warner Building<br>150 Ottawa Avenue, NW<br>Grand Rapids, MI 49503<br>(616) 752-2000<br>ebardelli@wnj.com | Jason E. Reisman<br>BLANK ROME<br>Attorneys for Defendant<br>One Logan Square<br>130 North 18th Street<br>Philadelphia, PA 19103<br>(215) 569-5598<br>jreisman@blankrome.com<br><br>Lee T. Silver (P36905)<br>SILVER & VAN ESSEN, P.C.<br>Attorneys for Defendant<br>300 Ottawa Avenue, NW, Suite 620<br>Grand Rapids, MI 49503<br>(616) 988-5600<br>ltsilver@silvervanessen.com |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE UNITED STATES
<u>DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>**

**ORAL ARGUMENT AND EVIDENTIARY HEARING REQUESTED**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT FACTUAL BACKGROUND....................................................................................3

I.      Plaintiff's Global Business and Corporate Headquarters in Ireland....................................3

II.     Mr. Holz's Historical Employment Roles ........................................................................4

III.    Mr. Holz Participates in Plaintiff's Voluntary Early Retirement Program.........................7

IV.    Plaintiff's Termination of Its Customer Relationship with QLB and Litigation
Between Plaintiff and QLB.............................................................................................8

V.     Plaintiff's Conclusory Allegations of Damages and Causation and Impermissible
Attempt to Recoup Unrestricted Financial Consideration Paid to Mr. Holz in Lieu
of Actual Damages.........................................................................................................11

LEGAL ARGUMENT ....................................................................................................................11

I.      The Court Lacks General or Specific Personal Jurisdiction Over Mr. Holz. ...................11

     A.     Legal Standard for Dismissal Pursuant to Rule 12(b)(2)......................................11

     B.     This Court Does Not Have Specific Jurisdiction Over Mr. Holz. .........................13

     C.     This Court Also Cannot Exercise General Jurisdiction Over Mr. Holz. ...............16

II.     This Court is Not a Proper Venue under 28 U.S.C. § 1391(b). .........................................18

     A.     Legal Standard for Dismissal Pursuant to Rule 12(b)(3)......................................18

     B.     Venue in Michigan is Improper Under 28 U.S.C. § 1391(b)(2). ...........................19

III.    At minimum, This Court Should Transfer this Action to the Eastern District of
Pennsylvania Under 28 U.S.C. § 1404(a). ...................................................................20

IV.    Plaintiff Has Failed to State a Claim for Breach of Contract. .........................................22

     A.     Plaintiff Has Not Pleaded a Plausible Claim for Breach of Contract Since
It Has Not Identified the Confidential Information Mr. Holz Used or
Disclosed.........................................................................................................23

     B.     Plaintiff Has Not Pleaded a Plausible Claim for Breach of Contract Since
It Failed to Plead Any Cognizable Damages and Causation. ................................25

CONCLUSION..............................................................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abramoff v. Shake Consulting, L.L.C.*,
   288 F. Supp. 2d 1 (D. D.C. 2003) ...........................................................................19

*Am. Greetings Corp. v. Cohn*,
   839 F.2d 1164 (6th Cir.1988) ..................................................................................11

*Apex Tool Grp., LLC v. Wessels*,
   119 F. Supp. 3d 599 (E.D. Mich. 2015).................................................................27

*Asahi Metal Indus. v. Super. Ct. of Cal.*,
   480 U.S. 102 (1987)...............................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................23

*Binion v. O'Neal*,
   95 F. Supp. 3d 1055 (E.D. Mich. 2015).................................................................16

*Bissell Homecare, Inc. v. PRC Indus., Inc.*,
   No. 13-cv-1182, 2014 WL 3756131 (E.D. Mich. July 31, 2014)...........................17

*Bulso v. O'Shea*,
   730 F. App'x 347 (6th Cir. 2018) ...........................................................................13

*Children's Legal Servs., PLLC v. Shor Levin & Derita*,
   PC, 850 F. Supp. 2d 673 (E.D. Mich. 2012)..........................................................17

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) ..................................................................................12

*Crayola LLC v. Buckley*,
   No. 15-cv-6270, 2016 WL 1461204 (E.D. Pa. Apr. 14, 2016)................................20

*Fischell v. Cordis Corp.*,
   No. 1:15-cv-184, 2016 WL 8467615 (W.D. Mich. Feb. 18, 2016) .........................20

*Hastings Fiber Glass Prods., Inc. v. Enlace Mercantil Internacional, Inc.*,
   No. 1:16-cv-177, 2017 WL 1133414 (W.D. Mich. Mar. 7, 2017) ....................19, 21

*Helwig v. Vencor*,
    210 F.3d 612 (6th Cir. 2000), *rev'd on other grounds*, 251 F.3d 540 (6th Cir.
    2001) (*en banc*), *cert. denied*, 536 U.S. 935 (2002) ....................................................4

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014) .......................................................................................3

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)....................................................................................................12

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
    106 F.3d 147 (6th Cir.1997) ...............................................................................13, 16

*LGT Enterprises, LLC v. Hoffman*,
    614 F. Supp. 2d 825 (W.D. Mich. 2009) ...................................................................13

*Miller-Davis Co. v. Ahrens Const., Inc.*,
    848 N.W.2d 95 (Mich. 2014).................................................................................23, 25

*Pulse Techs., Inc. v. Dodrill*,
    No. 06-cv-4549, 2006 WL 3589028 (E.D. Pa. Dec. 7, 2006)....................................20

*Reynolds v. Int'l Amateur Athletic Fed'n*,
    23 F.3d 1110 (6th Cir.), *cert. denied*, 513 U.S. 962 (1994)......................................12

*Schultz v. Ary*,
    175 F. Supp. 2d 959 (W.D. Mich. 2001) ...........................................................11, 12

*Steelcase, Inc. v. Mar-Mol Co., Inc.*,
    210 F. Supp. 2d 920 (W.D. Mich. 2002) ...................................................................19

*Storie v. Beech Aircraft Corp.*,
    417 F. Supp. 141 (E.D. Mich. 1976)..........................................................................18

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir.1991) ..........................................................................3, 11, 12, 13

*Walden v. Fiore*,
    571 U.S. 277 (2014)....................................................................................................13

*Wesley Corp. v. Zoom T.V. Prod., LLC*,
    No. 17-cv-10021, 2018 WL 2268332 (E.D. Mich. May 17, 2018) ............................27

**Statutes**

18 U.S.C. §§ 1391(b)(1) ..................................................................................................3, 20

28 U.S.C. § 1391 ...................................................................................................................18

28 U.S.C. § 1391(b) .................................................................................................18

28 U.S.C. § 1391(b)(2) ..............................................................................................3

28 U.S.C. § 1391(b)(2) ........................................................................................19, 20

28 U.S.C. § 1404(a) ...................................................................................3, 20, 21, 22

28 U.S.C. § 1406(a) ...................................................................................3, 18, 20, 22

Mich. Comp. Laws § 600.701 ...................................................................................13

**Other Authorities**

Rule 12(b)(2) ........................................................................................................3, 11, 22

Rule 12(b)(3) ...................................................................................................3, 18, 19, 22

Rule 12(b)(6) ...................................................................................................... *passim*

Rule 12(e) .................................................................................................................24

Rule 56 .......................................................................................................................4

Defendant Robert Holz ("Mr. Holz") files this memorandum of law in support of his Motion to Dismiss or, in the Alternative, Transfer to the United States District Court for the Eastern District of Pennsylvania (the "Motion"). For the reasons set forth herein, Defendant respectfully requests that the Court grant this Motion and enter an Order in the proposed form attached hereto.

## PRELIMINARY STATEMENT

In this action, Perrigo Company plc—an Irish corporation with its "Corporate Headquarters" in Dublin, Ireland ("Plaintiff" or the "Company")—sues Mr. Holz—formerly the Vice President of Commercial Operations – International Nutrition for the infant formula business run by one of Plaintiff's non-party subsidiaries. Mr. Holz resides in the Commonwealth of Pennsylvania, where he resided and worked for Plaintiff's non-party subsidiary PBM Nutritionals for 7 years.  PBM nutritionals is a Delaware company with its principal place of business and headquarters in the Commonwealth of Virginia.

Plaintiff's sole claim against Mr. Holz consists of vague allegations that he breached the confidentiality obligation set forth in the separation agreement he entered into with Plaintiff in connection with his participation in its voluntary retirement program in 2017 (the "Early Retirement Agreement," as defined in the Complaint). Upon closer reading, however, Plaintiff's allegations are evidently rooted in its dissatisfaction that Mr. Holz deigned to try to earn income after the termination of his employment, including through a short-lived, informal consulting role with international infant formula company Quality of Life Brands ("QLB"). But Mr. Holz was not subject to any non-competition restriction, nor was he subject to any restriction on his ability to work for or with any of the current or former customers of Plaintiff or its subsidiaries. Nor can Plaintiff genuinely maintain any claim premised on its relation with QLB, for Plaintiff admits, in the Complaint, that it terminated its relationship with that customer in 2017 for reasons having nothing to do with Mr. Holz.

Plaintiff may wish that it had bargained for more onerous post-employment obligations restraining Mr. Holz's activities, but it did not. And the consideration it afforded Mr. Holz in exchange for his willingness to participate in the voluntary retirement program would have had to be far greater in order to entice executives like Mr. Holz—who had nearly three decades of experience in the industry—to forego future employment opportunities. This Court should not indulge Plaintiff's naked attempt to re-write the Early Retirement Agreement by broadening the confidentiality restrictions in it to prohibit routine, freelance consulting work for customers or to prohibit any other form of ordinary competition.

Even as to the alleged breach of the confidentiality obligation in the Early Retirement Agreement, Plaintiff does not allege that Mr. Holz retained any of Plaintiff's or its subsidiaries' electronic devices or other property or that he somehow unlawfully accessed confidential information after his employment ended. Plaintiff's claim is, instead, predicated entirely on information it speculates is in Mr. Holz's head, but Plaintiff does not even identify in the Complaint the specific information it claims is confidential and within the scope of the Early Retirement Agreement's confidentiality obligations. Nor has Plaintiff alleged any actual damages or financial harm caused by any alleged breach. Tellingly, Plaintiff has not even sought injunctive relief, as would be typical in a case predicated entirely on an alleged breach of a confidentiality obligation. Instead, Plaintiff retributively seeks to recoup the consideration Mr. Holz received in exchange for his willingness to retire voluntarily and, as a result, forego years of salary and benefits he otherwise would have earned had he remained employed in his role. And it does so without any recoupment right in the Early Retirement Agreement.

Putting to one side those obvious defects in Plaintiff's breach of contract claim—which themselves warrant dismissal under Rule 12(b)(6)—this Court also lacks personal jurisdiction over

2

Mr. Holz, and venue is improper in this district because a substantial part of the events at issue in Plaintiffs' claim did not occur and could not have occurred in the State of Michigan, and Plaintiffs filing of this lawsuit in this Court appears aimed solely at forcing Mr. Holz to incur unnecessary legal costs defending an action filed in this distant forum. Thus, at a more fundamental level, dismissal is warranted under Rules 12(b)(2)-(3).

Even were Plaintiff's claim able to sustain challenge under Rule 12(b)(6), the only proper venue for the parties' dispute under 18 U.S.C. §§ 1391(b)(1) or (2) is the United States District Court for the Eastern District of Pennsylvania, and, in the alternative to dismissal under Rule 12(b)(2) and (3) and 28 U.S.C. § 1406(a), this action should, at minimum, be transferred to the Eastern District of Pennsylvania.[1]

## RELEVANT FACTUAL BACKGROUND[2]

### I.   PLAINTIFF'S GLOBAL BUSINESS AND CORPORATE HEADQUARTERS IN IRELAND

Plaintiff is an Irish corporation with its "Corporate Headquarters" and its "principal executive offices" in Dublin, Ireland.[3] (*See* Perrigo Company plc 10-K (Feb. 27, 2020) (relevant

---

[1] Even were venue somehow proper in this Court under 28 U.S.C. 1391(b)(2), transfer would still be appropriate and warranted under 28 U.S.C. § 1404(a), as set forth more fully below.

[2] In addressing the Court's lack of personal jurisdiction and the impropriety of venue in this Court, Mr. Holz submits the attached Declaration of Robert Holz (Exhibit ("Ex.") "1").  *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (the Court reviews the pleadings and affidavits submitted on a 12(b)(2) motion in a light most favorable to the plaintiff and may consider them on a motion to dismiss with argument and a hearing).

[3] Plaintiff is a publicly traded corporation (NYSE: PRGO) and, consistent with its obligations under U.S. securities laws and regulations, regularly makes filings to the United States Securities and Exchange Commission (the "SEC") that are publicly available on the SEC's searchable database, EDGAR. Those filings include annual reports (Form 10-K) and, among other things, historical and current versions of Plaintiff's Long-Term Incentive Plan and Severance Plans, both of which are referenced in Plaintiff's Complaint and, thus, properly within the scope of review on the instant Motion. This Court is permitted to take judicial notice of those regulatory filings—which are certified by Plaintiff's executives under penalty of law for falsity. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (discussing *Helwig v. Vencor*, 210

portions of which are attached hereto as Ex. "2") at p. 29 (identifying Dublin, Ireland as Plaintiff's "Corporate Headquarters").)[4] Plaintiff and its subsidiaries manufacture prescription and over-the-counter pharmaceuticals and self-care products, including infant formula and other pediatric nutritional products for customers to export and sell around the world. (*See* Compl. at ¶¶ 1, 6, 7.)

## II.    MR. HOLZ'S HISTORICAL EMPLOYMENT ROLES

Over a decade ago, Mr. Holz took on the role of Vice President for Europe, Middle East, and Africa operations for Plaintiff's subsidiary PBM Nutritionals. (*See* Compl. at ¶ 8.)  PBM Nutritionals is a Delaware company based, and with its principal place of business in, the Commonwealth of Virginia. (*See, e.g.*, Dkt. No. 6 (Answer), Case No. 3:19-cv-00013-GEC (W.D. Va. – Charlottesville), attached as Ex. "4," at ¶ 2; *see also* Ex. 1 (Decl. of Robert Holz) at ¶ 4.)

In connection with that initial position, Mr. Holz signed a Confidentiality Agreement which, among other things, defined the company's "Confidential Information" as "all information

---

F.3d 612 (6th Cir. 2000), *rev'd on other grounds*, 251 F.3d 540 (6th Cir. 2001) (*en banc*), *cert. denied*, 536 U.S. 935 (2002)) ("[W]e have recognized that if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment. Fairness and efficiency require this practice."). Plaintiff therefore cannot contest the veracity of its SEC filings, and those filings may be reviewed by this Court to bear on the veracity and plausibility of the allegations pleaded in the Complaint. *See id.*

[4] The Perrigo Company plc 10-K is publicly available on the SEC's EDGAR database: https://www.sec.gov/Archives/edgar/data/1585364/000158536420000013/cy19q410k.htm. While one of Plaintiff's subsidiaries may have operations or even be headquartered in the State of Michigan, this Plaintiff—the only entity with whom Mr. Holz contracted and which has standing to assert a breach of contract claim against him—is an Irish corporation with its principal place of business in Dublin, Ireland. Plaintiff's 10-K, contrary to the self-serving allegations in Paragraph 1 of the Complaint, identifies Michigan not as Plaintiff's "principal place of business" but as merely its "North American base of operations," and instead represents to the SEC and investors that Dublin, Ireland, is Plaintiff's "principal executive offices." (*See* Ex. 2 at p. 29 ("Our principal executive offices are located at The Sharp Building, Hogan Place, Dublin 2, D02 TY74, and our North American base of operations is located at 515 Eastern Avenue, Allegan, Michigan 49010.").)

regarding the business of Perrigo and its subsidiaries and affiliated companies that [Mr. Holz] acquire[d] in the course of [his] employment…which has not been made generally known to the public…including, but not limited to, information concerning . . . product formulae, process and method specifications, . . . marketing activities, customer lists, cost and pricing data, [and] business plans." (*See* Compl. at ¶¶ 10-11.)  In the Confidentiality Agreement, Mr. Holz agreed that he would not use or disclose the "Confidential Information" without the company's consent during and after his employment. (*See* Compl. at ¶¶ 12-13.)

In the fall of 2013, Mr. Holz was promoted to PBM Nutritionals' Vice President for Commercial Operations – International Nutrition. (*See* Compl. at ¶ 16; Ex. 1 (Decl. of Robert Holz) at ¶ 3.)  In that role, Mr. Holz was responsible for the company's international infant nutrition commercial activities, managing sales of infant formula to customers who exported the products to foreign markets, including Europe, the Middle East, Africa, Asia, Australia, Central America, and South America, and vetting and negotiating with prospective customers. (*See* Compl. at ¶¶ 17-18; Ex. 1 (Decl. of Robert Holz) at ¶ 3.) At all material times, PBM Nutritionals was based in the Commonwealth of Virginia, including general management, finance, legal, U.S. sales and marketing, regulatory, clinical/medical, and human resources functions supporting the nutritionals business. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 4.)  None of the nutritionals business was based in Michigan, and the handful of individuals Mr. Holz managed in his role and the General Manager to whom Mr. Holz reported were all based in at PBM Nutritionals' Virginia offices, except for one individual Mr. Holz managed who resided in Shanghai, China. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 5.)  And none of the customers Mr. Holz supported was based in the State of Michigan. (*See*

Ex. 1 (Decl. of Robert Holz) at ¶ 6.) For instance, QLB was a PBM Nutritionals customer based in South Carolina.[5]  (*See id*.)

In his role as Vice President of Commercial Operations – International Nutrition, Mr. Holz traveled regularly abroad and was in contact with employees and customers outside of the State of Michigan and internationally. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 6.)  Mr. Holz primarily worked remotely from the Commonwealth of Pennsylvania, but he did travel to PBM Nutritionals' Virginia offices on a monthly basis, in general, and he periodically traveled to PBM Nutritionals' manufacturing facilities in in the States of Vermont and Ohio.[6] (*See id*.) But Mr. Holz rarely traveled to Michigan—which is natural given that the nutritionals business was based in and run out of Virginia. (*See id*.)

Plaintiff alleges that, in his role as Vice President for Commercial Operations – International Nutrition, Mr. Holz had access to "Confidential Information" such as the company's strategy for contract negotiations and management of customers who exported infant formula to China, including South Carolina-based customer QLB, which entered into a supply agreement with PBM Nutritionals in 2016 with respect to infant formula intended for export to and sale in China.[7] (*See* Compl. at ¶¶ 19-22.)

---

[5] (*See also* Ex. 4 at ¶ 2.)

[6] On a few occasions, Mr. Holz also traveled to Perrigo's offices in the United Kingdom. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 6.)

[7] While Plaintiff alleges that the supply agreement was between QLB and it, the supply agreement was actually between QLB and PBM Nutritionals, as reflected in the pleadings in the litigation referenced in the Complaint. (*See*, *e.g.*, Ex. 4 at ¶ 7.)

Prior to the termination of Mr. Holz's employment, he was privy to some discussions about the company's strategy for managing customers that exported infant formula to China.[8] (*See* Compl. at ¶¶ 23-24.) Plaintiff further alleges that Mr. Holz was "notified," prior to the termination of his employment, that QLB was not among the customers for which the company would continue to supply infant formula for import to China and that the company would be terminating the QLB supply contract. (*See* Compl. at ¶¶ 25-26.)

### III.   MR. HOLZ PARTICIPATES IN PLAINTIFF'S VOLUNTARY EARLY RETIREMENT PROGRAM

In 2017, Mr. Holz elected to participate in the "Perrigo PLC U.S. Voluntary Early Retirement Incentive Program 2017," pursuant to which he became eligible to receive severance pay and severance benefits under the "Perrigo U.S. Severance Policy" then in effect after entering into a Waiver and Release Agreement (defined in the Complaint as the "Early Retirement Agreement") on or about July 1, 2017. (*See* Compl. at ¶¶ 27-29.)

Plaintiff presented Mr. Holz with the Early Retirement Agreement by mail to his home address in the Commonwealth of Pennsylvania, and that is where Mr. Holz entered into the Early Retirement Agreement and performed under it, including during any period of alleged breach. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 8.) Following Mr. Holz's execution of the Early Retirement Agreement, Plaintiff provided Mr. Holz with the promised severance payments and severance benefits, including two payments totaling $310,030.32, which were made on July 31, 2017 and March 9, 2018. (Compl. at ¶ 34-36.)  In addition, under the Early Retirement Agreement, Mr. Holz was also treated as a retired employee for purposes of Plaintiff's Long-Term Incentive Plan, resulting in the vesting of the Restricted Stock Units 0("RSUs") he had received during his

---

[8] Any such discussions would have occurred in-person in Charlottesville, Virginia, or by Mr. Holz's participation by phone or by email from Chester County, Pennsylvania. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 13.)  Mr. Holz was never present in Michigan for any such discussion. (*See id.*)

employment and their conversion to common stock in Plaintiff immediately upon his departure in July 2017. (*See* Compl. at ¶¶ 37-41.)  Plaintiff alleges that, at the time of Mr. Holz's termination of employment, the converted RSUs had a net value of $136,463.58. (*See* Compl. at ¶ 41.) All of the financial consideration Mr. Holz received in exchange for his willingness to participate in Plaintiff's voluntary separation program under the Early Retirement Agreement was paid to Mr. Holz in the Commonwealth of Pennsylvania and deposited into accounts held by him in Pennsylvania. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 11.)

Among other things, Mr. Holz agreed in the Early Retirement Agreement to abide by the terms of the Confidentiality Agreement (which was incorporated in its entirety into the Early Retirement Agreement) as well as the parallel confidentiality provisions contained in the Severance Policy. (*See* Compl. at ¶¶ 30-33.)

While the Early Retirement Agreement permits Plaintiff to, as Plaintiff alleges in the Complaint, pursue all available legal or equitable remedies ***to recover any damages*** suffered as the result of a breach of the Early Retirement Agreement by Mr. Holz, including his post-employment confidentiality obligation, and to seek injunctive relief, the Early Retirement Agreement does not provide Plaintiff with any contractual right to recoupment of any of the financial consideration Mr. Holz received under it (*i.e.*, the severance or severance benefits).[9] (*See* Compl. at ¶¶ 42-43 & Ex. B (Early Retirement Agreement), ¶ 13.)

## IV.   PLAINTIFF'S TERMINATION OF ITS CUSTOMER RELATIONSHIP WITH QLB AND LITIGATION BETWEEN PLAINTIFF AND QLB

---

[9] The Early Retirement Agreement contains a choice-of-law provision, selecting Michigan law as the governing law, but it does not contain any forum-selection provision or any provision pursuant to which Mr. Holz consented to personal jurisdiction or venue in this Court (or any other). (*See* Compl. at ¶ 29.)

Although Plaintiff alleges that PBM Nutritionals had already determined, prior to the termination of Mr. Holz's employment, that QLB was not among the customers for which the company would continue to supply infant formula for import to China and that the company would be terminating the QLB supply contract, (*see* Compl. at ¶¶ 25-26), Plaintiff alleges that it was not until December 1, 2017 that QLB was informed that PBM Nutritionals was terminating the supply agreement, (*see id.* at ¶ 45). Plaintiff alleges that QLB disputed the termination of the supply agreement, leading to discussions between the companies regarding a potential resolution of their dispute. (*See* Compl. at ¶¶ 45-46.)  But QLB ultimately sued one of PBM Nutritionals (and not the Plaintiff itself) over the supply agreement dispute, and Plaintiff alleges that QLB somehow relied "in part" on confidential information that Mr. Holz had shared with QLB as part of that litigation.[10] (*See* Compl. at ¶ 51.)

Plaintiff vaguely alleges that, between November and December 2017, Mr. Holz was in regular contact with QLB as a consultant and that he "used and revealed to QLB a treasure trove of Perrigo Confidential Information to benefit QLB in its relationship with Perrigo in direct violation of his confidentiality obligations to Perrigo under his Confidentiality Agreement and Early Retirement Agreement," including the following generic categories of information:

- the number of infant formula brands Perrigo would continue to manufacture for the Chinese market;
- the name of Perrigo's ongoing customers of infant formula for the Chinese market;
- the number of formulations of infant formula Perrigo would continue to manufacture for the Chinese market;
- the names of the specific formulation of infant formula Perrigo would continue to manufacture for sale in China;
- Perrigo's strategy to address its supply-agreement dispute with QLB;

---

[10] The lawsuit was filed against an entity by the name of PBM Nutritionals, LLC d/b/a Perrigo Nutritionals, which, according to the Answer filed by that entity in the proceeding referenced in the Complaint, is a Delaware corporation with its principal place of business in Charlottesville, Virginia. (*See, e.g.*, Ex. 4 at ¶ 2.)

- Perrigo's strategy for complying with Chinese import regulations; and
- Perrigo's internal staffing, personnel moves, and business strategy.

(Compl. at ¶ 47.)  Although Plaintiff makes no effort to tie the conduct to any violation of the Early Retirement Agreement, it also alleges that Mr. Holz advised QLB regarding its dispute with Perrigo "with the express purpose of helping QLB maximize its potential claim against Perrigo," including recommendations of strategy and his opinion on how Plaintiff's representatives may react—conduct that appears to have nothing to do with any confidential information. (*See* Compl. at ¶¶ 48-50.)

During all periods in which Plaintiff alleges—without specificity—that Mr. Holz was somehow using or disclosing Plaintiff's confidential information, Mr. Holz resided in the Commonwealth of Pennsylvania. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 13; *see also* Compl. at ¶ 2.) Plaintiff does not allege that Mr. Holz retained physical possession of any of Plaintiff's property, such as electronic devices, or that he somehow retained physical or electronic access to any of Plaintiff's or its subsidiaries' computer or web-based systems following the termination of his employment (let alone access to any such property or information in the State of Michigan). (*See generally* Compl.)

Plaintiffs' portrayal of Mr. Holz's consulting relationship with QLB is sensationalized, for, in reality, Mr. Holz's consulting relationship with QLB was limited, resulting in just $2,100 of income from QLB for any consulting work after the termination of his employment.[11]  (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 14.)

---

[11] Mr. Holz received a single payment from QLB directed to him in the Commonwealth of Pennsylvania, which was deposited into his bank accounts there. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 11.)

V.   **PLAINTIFF'S CONCLUSORY ALLEGATIONS OF DAMAGES AND CAUSATION AND IMPERMISSIBLE ATTEMPT TO RECOUP UNRESTRICTED FINANCIAL CONSIDERATION PAID TO MR. HOLZ IN LIEU OF ACTUAL DAMAGES**

The extent of Plaintiff's allegations of damages and causation is the following conclusory allegation in the Complaint: "As a direct result of [Mr.] Holz's breach, P[laintiff] has suffered damages at minimum of $436,494.00." (Compl. at ¶ 57.)  Although not specified in the Complaint, that monetary figure is simply the sum of the severance and severance benefits paid to Mr. Holz under the Early Retirement Agreement rounded up to the nearest dollar—*i.e.*, $310,030.32 in severance payments, (*see* Compl. at ¶¶ 34-36), and a net valuation of the converted RSUs of $136,463.58 (*see id.* at ¶ 41).

Plaintiff does not allege how Mr. Holz's purported breach of the confidentiality obligations caused that, or any other, damage to Plaintiff, implicitly conceding, as it must, that it has not actually suffered any harm or sustained any financial damages at all.

## **LEGAL ARGUMENT**

I.   **THE COURT LACKS GENERAL OR SPECIFIC PERSONAL JURISDICTION OVER MR. HOLZ.**

A.   **LEGAL STANDARD FOR DISMISSAL PURSUANT TO RULE 12(B)(2).**

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Plaintiff bears the "burden of establishing that jurisdiction exists" over Mr. Holz. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir.1988). In a case purportedly based on diversity jurisdiction, the Court must apply the law of the forum state, Michigan, to determine whether it may exercise personal jurisdiction over Mr. Holz as a non-resident defendant.[12] *See Schultz v. Ary*, 175 F. Supp. 2d 959, 962 (W.D. Mich. 2001) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991)). The

---

[12] Mr. Holz submits that Plaintiff's failure to plead damages confirms that this Court lacks subject matter jurisdiction.  Plaintiff's inclusion of the severance payment and benefits as "damages" is, simply put, a transparent attempt to secure this Court's subject matter jurisdiction.

court may begin by examining relevant due process considerations, "recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the [relevant state] long-arm statute would otherwise permit it." *Theunissen*, 935 F.2d at 1459. In this due process analysis, Plaintiff must establish that Mr. Holz has constitutionally sufficient "minimum contacts with the forum state" such that the assertion of personal jurisdiction over him "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction can be established by either specific jurisdiction or general jurisdiction. *Schultz*, 175 F. Supp. 2d at 963.

Specific jurisdiction "confers power upon the court to enter personal judgments against the defendant only upon claims which arise out of the act(s) establishing the jurisdictional connection between the defendant and the forum." *Theunissen*, 935 F.2d 1454, n. 4 (citing Mich. Comp. Laws Ann. Chapter 7, Practice Commentary at 606 (West 1981)). The Sixth Circuit applies the following three-part test when determining whether specific jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Id*. (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir.), *cert. denied*, 513 U.S. 962 (1994)). When considering the third prong of this test, courts look to the following factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief. *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp*., 399 F.3d 651, 666 (6th Cir. 2005) (citing *Asahi Metal Indus. v. Super. Ct. of Cal*., 480 U.S. 102, 113 (1987)).

General jurisdiction "provides a court possessing proper subject matter jurisdiction with the authority 'to enter a binding personal judgment [over the defendant] regardless of where the

facts or circumstances giving rise to the cause of action may have occurred, in the state or out.'" *Theunissen*, 935 F.2d 1454, n. 4. But general jurisdiction carries a high standard, requiring Plaintiff to establish "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims" it may have against Mr. Holz. *Kerry Steel, Inc. v. Paragon Indus., Inc*., 106 F.3d 147, 149 (6th Cir.1997) (citations and quotation marks omitted); *LGT Enterprises, LLC v. Hoffman*, 614 F. Supp. 2d 825, 829 (W.D. Mich. 2009) (noting standard). Under Michigan law, general personal jurisdiction arises in three instances: (1) when the defendant is present in the state at the time of service of process; (2) when the defendant is domiciled in the state at the time process is served; and (3) when the defendant has consented to jurisdiction. *Theunissen*, 935 F.2d 1454, n. 4 (citing Mich. Comp. Laws § 600.701).

As set forth more fully below, this Court must dismiss the Complaint because it lacks both specific and general jurisdiction over Mr. Holz.

### B.      THIS COURT DOES NOT HAVE SPECIFIC JURISDICTION OVER MR. HOLZ.

To satisfy the Due Process clause of the U.S. Constitution, this Court must find that "the ***defendant's suit-related conduct*** … create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis supplied). In other words, there must be a relationship between the defendant, the forum, and the litigation, but it must be the defendant himself—*not* the plaintiff or any third party—who creates the suit-related contact with the forum state. *See id.* at 1126. As the Supreme Court has explained, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at. 1125; *see also Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) ("After *Walden*, there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum").

13

Here, Plaintiff cannot credibly dispute that the events and conduct of Mr. Holz related to its single breach of contract claim against him have no such "meaningful" connection to the State of Michigan to permit this Court to assert specific jurisdiction over him.

As a threshold matter, the Early Retirement Agreement that forms the basis of Plaintiff's only claim against Mr. Holz did not contain any forum-selection provision or consent to personal jurisdiction or venue in the State of Michigan (or in any forum at all, for that matter). (*See* generally Compl. at Ex. B.) In the absence of Mr. Holz's consent to suit in this forum, Plaintiff must therefore establish that there is a "meaningful" connection between Mr. Holz's conduct and the events constituting a breach of contract and the State of Michigan. Plaintiff's Complaint fails to plead any connection at all, let alone a "meaningful" connection.  Nor can Plaintiff credibly allege such a connection given that the entirety of the claim against Mr. Holz pertains to conduct that allegedly occurred after his employment,[13] while Mr. Holz was residing in the Commonwealth of Pennsylvania; while Mr. Holz had no physical possession of any Perrigo property, including confidential information, or any access to systems in the State of Michigan or otherwise; and while he was providing sporadic, freelance consulting services to QLB—a South Carolina company— and communicating with QLB employees who are themselves based in the State of South Carolina. (*See* Compl. at ¶¶ 1; Ex. 1 (Decl. of Robert Holz) at ¶¶ 13, 15.) Moreover, the subject matter of Mr. Holz's post-termination conduct concerns the sale and distribution of infant formula in China to Chinese buyers and associated logistical and regulatory issues in China and a dispute between QLB (a PBM Nutritionals customer based in the State of South Carolina) and Plaintiff's subsidiary

---

[13] Even were any earlier conduct at issue, it is indisputable that Mr. Holz worked for PBM Nutritionals—a Delaware company based in Charlottesville, Virginia—and that Mr. Holz, at all material times, worked remotely from the Commonwealth of Pennsylvania.  (*See* Ex. 1 (Decl. of Robert Holz) at ¶¶ 1, 6, 15.)

PBM Nutritionals in the Commonwealth of Virginia. (*See* Compl. at ¶¶ 45-46, 48-51; *see also* Dkt. No. 1, Case No. 3:19-cv-00013-GEC (W.D. Va. – Charlottesville).)

Simply put, nothing alleged in Plaintiff's Complaint ***as the basis for its claim against Mr. Holz*** has anything at all to do with Michigan.

Even the Early Retirement Agreement itself was presented to Mr. Holz in Pennsylvania and signed by him in Pennsylvania,[14] and the financial consideration he agreed to receive in exchange for his willingness to participate in the voluntary retirement program and forego further compensation and benefits as an employee—consideration Plaintiff now seeks to recoup without any basis in the Early Retirement Agreement or applicable law—was all paid to Mr. Holz in the Commonwealth of Pennsylvania and deposited into accounts there.[15]

Although Plaintiff has alleged "damages" in the amount of $436,494, that figure does not actually constitute damages at all but rather the sum of the financial consideration Mr. Holz received under the Early Retirement Agreement—none of which was forfeited prior to Plaintiff's payment of it and none of which is subject to recoupment under the Early Retirement Agreement or otherwise. (*See* Compl. at ¶¶ 34-36, 41, 57.)  Beyond the fact that Plaintiff has failed to allege any legal right to seek recoupment, Plaintiff has not even plausibly alleged that Mr. Holz's alleged conduct caused any damages at all, let alone damages of that amount. Having failed to plead damages, Plaintiff cannot plausibly claim to have incurred harm in the State of Michigan (or anywhere, for that matter). And Plaintiff's having allegedly sustained damages in the State of Michigan would not support an exercise of specific personal jurisdiction, even if Plaintiff had

---

[14] (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 8.) That Agreement was formed upon Mr. Holz's execution of it, as it does not contain and did not require any countersignature by Plaintiff.

[15] (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 11.)

sustained and pleaded such damages and Mr. Holz's causation of them. *See, e.g.*, *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015) (holding that "the only connection to Michigan is Plaintiff's injury" and that "[t]his, without 'something more' is insufficient to establish personal jurisdiction").

In sum, there is no "meaningful connection" between Mr. Holz's alleged conduct that forms the basis of Plaintiff's breach of contract claim and the State of Michigan; and this Court cannot exercise specific personal jurisdiction over him.

### C.   THIS COURT ALSO CANNOT EXERCISE GENERAL JURISDICTION OVER MR. HOLZ.

There is no basis for this Court's exercise of general jurisdiction over Mr. Holz, and Plaintiff has not pleaded any. First, it is indisputable that Mr. Holz is Pennsylvania resident domiciled in the Commonwealth of Pennsylvania. (*See* Compl. ¶ 2; *see also* Ex. 1 (Decl. of Robert Holz) at ¶ 1.) Second, Mr. Holz was not physically present in the State of Michigan when served with the Complaint and Summons. (*See* Ex. 1 (Decl. of Robert Holz at ¶ 1.)  Third, the Early Retirement Agreement does not contain any forum-selection provision, and Mr. Holz has not consented to the jurisdiction of any Michigan court. (*See generally* Compl. at Ex. B.)  Finally, Plaintiff has not alleged any "continuous and systematic contacts with" the State of Michigan. *Kerry Steel*, 106 F.3d at 149.

The only allegations upon which Plaintiff appears to base its theory of jurisdiction pertain to sporadic, historical ties Mr. Holz may have had to the State of Michigan at some point over his 7-year employment with Plaintiff's subsidiary PBM Nutritionals. (*See* Compl. at ¶ 4.)  However, Plaintiff itself is an Irish corporation headquartered in Dublin, Ireland. (*See* Compl. at ¶ 1; Ex. 2 at pp. 1, 29.)  Mr. Holz worked for PBM Nutritionals, and not for Plaintiff itself or any Michigan entity.  PBM Nutritionals was, at all material times, based in the Commonwealth of Virginia, and

it is a Delaware company. (*See* Ex. 1 (Decl. of Robert Holz at ¶ 4.) The nutritionals business was based in PBM Nutritionals' Virginia offices, including general management, finance, legal, U.S. sales and marketing, regulatory, clinical/medical, and human resources functions supporting the nutritionals business. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 4.) None of the nutritionals business was based in Michigan, and the individuals Mr. Holz managed in his role and the General Manager to whom Mr. Holz reported were all based in at PBM Nutritionals' Virginia offices, except for one individual Mr. Holz managed who resided in Shanghai, China. (*See* Ex. 1 (Decl. of Robert Holz) at ¶ 5.) Although PBM Nutritionals was based in Virginia, Mr. Holz always resided and worked in and from the Commonwealth of Pennsylvania. (*See* Ex. 1 (Decl. of Robert Holz at ¶ 1.) Furthermore, Mr. Holz had no role in the State of Michigan, no domestic sales responsibilities, and none of the customers Mr. Holz supported was based in the State of Michigan. (*See* Ex. 1 (Decl. of Robert Holz at ¶ 6.) To the contrary, Mr. Holz was responsible for the sale of infant formula in Europe, the Middle East, Africa, Asia, Australia, Central America, and South America at material times. (*See* Compl. at ¶¶ 8, 16-17; Ex. 1 (Decl. of Robert Holz at ¶ 3.)

The fact that one of Plaintiff's other U.S. subsidiaries may have had some operations in the State of Michigan does not establish *Mr. Holz's* continuous and systematic contacts with the State of Michigan in connection with his employment with PBM Nutritionals. In addition, any sporadic, incidental contacts Mr. Holz is alleged to have had with any other Perrigo affiliate in Michigan over the course of his 7-year employment are not, as a matter of law, germane to this Court's analysis of general jurisdiction. *See, e.g.*, *Bissell Homecare, Inc. v. PRC Indus., Inc.*, No. 13-cv-1182, 2014 WL 3756131, at *4-5 (E.D. Mich. July 31, 2014) (agreeing with Magistrate Judge's recommendation that defendant's past, limited negotiations with plaintiff and other "tenuous or isolated contact" with Michigan did not establish a basis for general jurisdiction); *Children's Legal*

*Servs., PLLC v. Shor Levin & Derita*, PC, 850 F. Supp. 2d 673, 680 (E.D. Mich. 2012) (citing *Storie v. Beech Aircraft Corp.*, 417 F. Supp. 141, 145 (E.D. Mich. 1976)) ("Maintaining business contacts in Michigan through telephone communication, but not actually entering the state on a regular basis is not enough to establish continuous and systematic business in Michigan. Nor will a single trip to Michigan approximately 12 years before the present suit suffice.").

Accordingly, Plaintiff cannot meet its high burden of establishing that Mr. Holz maintained "continuous and systematic contacts" with the State of Michigan, and this Court cannot exercise general personal jurisdiction over him.

Having failed to establish either specific or general jurisdiction, this Court must dismiss Plaintiff's Complaint in its entirety.

## II.  THIS COURT IS NOT A PROPER VENUE UNDER 28 U.S.C. § 1391(B).

### A.  LEGAL STANDARD FOR DISMISSAL PURSUANT TO RULE 12(B)(3).

This action should be dismissed pursuant to Rule 12(b)(3) for the additional reason that venue in this Court is improper under 28 U.S.C. § 1391. *See* FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

There are only three bases for venue under Section 1391(b) for cases founded solely on diversity of citizenship: (1) the judicial district where the defendant resides; (2) "a judicial district in which a *substantial* part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated"; or (3) a judicial district in which the defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). Here, Mr. Holz

unquestionably resides and is domiciled in the Commonwealth of Pennsylvania, and he is subject to jurisdiction there. Consequently, Plaintiff may only rely upon Section 1391(b)(2).

### B.     VENUE IN MICHIGAN IS IMPROPER UNDER 28 U.S.C. § 1391(B)(2).

For venue to be proper under Section 1391(b)(2), the alleged events must have a substantial connection to the plaintiff's claims "to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship with the dispute." *Hastings Fiber Glass Prods., Inc. v. Enlace Mercantil Internacional, Inc.*, No. 1:16-cv-177, 2017 WL 1133414, at *3 (W.D. Mich. Mar. 7, 2017) (citation and internal quotations omitted). "Therefore, 'courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred.'" *Id.* (quoting *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4 (D. D.C. 2003)). On a motion to dismiss for improper venue under Rule 12(b)(3), the "plaintiff has the burden of proving that venue is proper in the forum state." *Steelcase, Inc. v. Mar-Mol Co., Inc.*, 210 F. Supp. 2d 920, 936 (W.D. Mich. 2002).

Here, Plaintiff has not established and cannot establish that venue is proper in this Court. Just as there is no "meaningful connection" between Mr. Holz's alleged conduct and the State of Michigan insofar as specific personal jurisdiction is concerned, there can be no dispute that the "substantial part of the events" upon which Plaintiff's claim against Mr. Holz is based occurred (if at all) outside of the State of Michigan and, if anywhere in the United States, in the Commonwealth of Pennsylvania.[16]   Pennsylvania is the venue in which Mr. Holz resided and worked, the venue

---

[16] Plaintiff's only allegation regarding the propriety of venue in this Court is a failed attempt at a formulaic recitation of Section 1391(b)(2). Plaintiffs allege that "this judicial district has a substantial connection to Perrigo's claims" (Compl. at ¶ 5), when Section 1391(b)(2) actually requires that this Court be "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Even were Plaintiff to try to establish venue based on Mr. Holz's incidental contacts in Michigan as an employee of Virginia-based subsidiary PBM Nutritionals, such incidental contacts do not relate to a claim of breach of contract or establish the propriety of venue in this Court. *See, e.g.*, *Pulse Techs., Inc. v.*

where he entered into and formed the Early Retirement Agreement that is the subject matter of Plaintiff's only claim in the Complaint, and the venue from which he performed all of the freelance consulting work for QLB that allegedly forms the basis of Plaintiff's claim in the Complaint. Furthermore, even if Plaintiff had plausibly alleged damages and causation—which it has not for the reasons set forth above—the location of any such economic harm would not be sufficient to establish proper venue under Section 1391(b)(2). *See, e.g.*, *Fischell v. Cordis Corp.*, No. 1:15-cv-184, 2016 WL 8467615, at *2 (W.D. Mich. Feb. 18, 2016) (holding that "the fact that one of the three Plaintiffs that Defendant contracted with has resided in Michigan, and suffered alleged economic harm, is not sufficient to establish proper venue").

For the foregoing reasons, Mr. Holz respectfully submits that this Court must dismiss this action under Section 1406(a).

## III. AT MINIMUM, THIS COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF PENNSYLVANIA UNDER 28 U.S.C. § 1404(A).

Even were venue somehow proper in this Court under Section 1391(b)(1) or (2), Mr. Holz respectfully submits, in the alternative, that this Court should, at minimum, transfer this action to the Eastern District of Pennsylvania under Section § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice" as Plaintiff could have and should have brought this action, if at all, in that judicial district. 28 U.S.C. §1404(a).[17]

"The purpose of § 1404(a) is to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Hastings*,

---

*Dodrill*, No. 06-cv-4549, 2006 WL 3589028, at *1, *5 (E.D. Pa. Dec. 7, 2006) (holding that out-of-state employee's travels to forum "a couple of times a year for company sales meetings and holiday parties" did not establish venue in forum), *discussed in Crayola LLC v. Buckley*, No. 15-cv-6270, 2016 WL 1461204, at *4 (E.D. Pa. Apr. 14, 2016).

[17] This Court also has the authority to transfer under Section 1406(a) without having to engage in any analysis under Section 1404(a).

2017 WL 1133414, at *5 (citation omitted). When considering a motion under Section 1404(a), courts consider the following factors: "the convenience of the parties and witnesses; the accessibility of evidence; the availability of process to make reluctant witnesses testify; the costs of obtaining willing witnesses; the practical problems of trying the case most expeditiously and inexpensively; and the interests of justice." *Id.*

The parties did not negotiate and agree to any forum-selection provision in the Early Retirement Agreement that is the basis for Plaintiff's claim against Mr. Holz, and Mr. Holz has not otherwise consented to jurisdiction or venue in this Court. Mr. Holz is an individual with limited income and resources residing 700 miles away from this Court, and he would be forced to incur significant additional costs, including legal fees and travel expenses, were this matter to remain in this Court. In addition, all of the documents and witnesses germane to this dispute are located in either the Commonwealth of Pennsylvania—where Mr. Holz resides and which any discoverable information from him is stored and collectable; in South Carolina—where QLB and its representatives are based and reside; and in Virginia—where PBM Nutritionals is based and where the litigation between QLB and Plaintiff occurred. (*See* Ex. 1 (Decl. of Robert Holz at ¶ 15.) Finally, counsel to QLB and PBM Nutritionals in the Virginia litigation between the two companies,[18] and Mr. Holz himself, all of whom will be witnesses in this dispute, are within a short drive or train ride to the Philadelphia area for testimony, but would be required to travel

---

[18] In addition to the representatives of QLB, counsel for QLB and counsel for Plaintiff are fact witnesses with respect to Mr. Holz's alleged involvement with the litigation between QLB and Plaintiff in Virginia federal court (as alleged in Paragraphs 45-46 and 48-51 of the Complaint), with respect to the discovery in that litigation upon which Plaintiff purports to base its claim against Mr. Holz in this action, with respect to the settlement and any release of claims in that litigation (which plausibly could bar Plaintiff's claim against Mr. Holz), and with respect to Plaintiff's termination of its customer relationship with QLB and the damage that decision (as opposed to any conduct of Mr. Holz) inflicted upon Plaintiff or any one of its subsidiaries.

much farther by plane, with the risks of the pandemic heightened, if this proceeding were to remain in this Court. Witnesses that are QLB representatives reside in South Carolina and would be required to travel by plane to testify regardless of the venue, but they can more easily fly to the Philadelphia area than to this judicial district. Witnesses who are representatives of Plaintiff's nutritionals business reside in Virginia given PBM Nutritionals' base of operations in Virginia, so they, too, are not present in Michigan. And, Plaintiff itself is a multinational, publicly-traded company with worldwide operations, and it certainly has the means to maintain this action in the Eastern District of Pennsylvania. Indeed, Plaintiff's counsel of record in this dispute appears, from a review of federal dockets, to regularly enter appearances throughout the country in litigation in which Plaintiff and its subsidiaries are named as parties, including the litigation between QLB and PBM Nutritionals in Virginia.

Finally, while the applicable law chosen by the parties for the Early Retirement Agreement is Michigan law, the only law applicable to Plaintiff's claim against Mr. Holz consists of basic, black-letter contract law and damages principles that could just as easily be applied in the Eastern District of Pennsylvania.

In sum, on balance, the Section 1404(a) factors weigh in favor of Mr. Holz and transfer of this action to the Eastern District of Pennsylvania in the event the Court does not dismiss the Complaint under Section 1406(a) and Rule 12(b)(3) or under Rule 12(b)(2).

## IV.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT.

The standard for dismissal under Rule 12(b)(6) is well-established through *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and their progeny. "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal quotations omitted). In other words, to survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that

is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Such conclusory allegations "are not entitled to the assumption of the truth" in the context of a motion to dismiss. *Iqbal*, 556 U.S. at 679.

In this action, Plaintiff asserts a single breach of contract claim against Mr. Holz predicated on his alleged breach of post-employment confidentiality obligations under the Early Retirement Agreement. Plaintiff "must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

### A. PLAINTIFF HAS NOT PLEADED A PLAUSIBLE CLAIM FOR BREACH OF CONTRACT SINCE IT HAS NOT IDENTIFIED THE CONFIDENTIAL INFORMATION MR. HOLZ USED OR DISCLOSED.

While Plaintiff has included generic, bulleted lists of categories of information Mr. Holz had at his disposal during his employment, Plaintiff has not identified with any reasonable degree of specificity the information Mr. Holz is alleged to have used or disclosed following the termination of his employment and during his brief period of freelance consulting work with QLB and how that information is, in fact, confidential.

This is not a situation in which Plaintiff comes to the Court unaware of its proof. Indeed, Plaintiff and QLB were already in extensive litigation in federal court in Virginia where Plaintiff had access to discovery including materials authored, sent to, and received by Mr. Holz in connection with his freelance consulting work. If Plaintiff genuinely believed that Mr. Holz had

breached his confidentiality obligations to Plaintiff, Plaintiff would already know about the specific breaches and be able to plead the specific information at issue. Plaintiff has not included such allegations in the Complaint for the same reason it has not moved for preliminary injunctive relief seeking to compel Mr. Holz to return or not use any of its confidential information: Mr. Holz does not have possession of any of Plaintiff's property, including Plaintiff's confidential information, nor has he had access to that information or any of Plaintiff's or its subsidiaries' systems since the termination of his employment. Instead, Plaintiff's theory relies upon generalized paranoia and speculation about what information may still reside in Mr. Holz's head years after the termination of his employment.

That Mr. Holz may have learned or long ago had access to Plaintiff's or its subsidiaries' confidential information does not constitute a breach of the Early Retirement Agreement and cannot support a claim for breach of contract.  In order to state a claim for breach of contract under Michigan law, Plaintiff must plead and prove that Mr. Holz used or disclosed specific information in violation of the confidentiality obligation in the Early Retirement Agreement. Plaintiff has not done so, and this Court should, therefore, dismiss Plaintiff's Complaint or, in the alternative under Rule 12(e), require Plaintiff to re-plead its allegations with specificity sufficient to identify the confidential information at issue, its confidentiality and the steps Plaintiff has taken to maintain its confidentiality, Mr. Holz's possession or knowledge of that information following the termination of his employment, and Mr. Holz's use or disclosure of that information following the termination of his employment. Surely Plaintiff is able, after the litigation with QLB to do so.[19]

---

[19] Plaintiff will otherwise engage in a fishing expedition with a morphing theory of its case, resulting in a needless waste of the parties and judicial resources. That appears, given the absence of any claimed or provable damages, to be Plaintiff's goal, consistent with the retributive tone and motivation of its Complaint.

**B.**     <u>**PLAINTIFF HAS NOT PLEADED A PLAUSIBLE CLAIM FOR BREACH OF CONTRACT SINCE IT FAILED TO PLEAD ANY COGNIZABLE DAMAGES AND CAUSATION.**</u>

In order to state a claim for breach of contract, Plaintiff must plead and prove not only a breach, but damages caused by that breach. *Miller-Davis*, 848 N.W.2d at 104 ("causation of damages is an essential element of any breach of contract action").

Were Plaintiff to have sought injunctive relief requiring Mr. Holz to return any information in his possession and to refrain from using or disclosing any confidential information going forward, Mr. Holz would likely have stipulated to such an injunction in a court of proper jurisdiction, avoiding a waste of the parties' and judicial resources. Similarly, were Plaintiff to acknowledge that it has sustained no monetary damages and to have sought nominal damages, this matter would not have met the statutory threshold for diversity jurisdiction (and it would have likely settled already, without a waste of the parties' and this Court's resources).

Instead, Plaintiff's Complaint includes no specific allegation of any damages at all, let alone any plausible allegation that Mr. Holz's alleged conduct is the factual and legal cause of any such damages. To the contrary, Plaintiff's Complaint instead identifies as "damages" a figure of $436,494, but that amount is simply the sum of the financial consideration Mr. Holz received in exchange for his willingness to participate in Plaintiff's voluntary retirement program and to forego his continued receipt of compensation and benefits as a full-time executive at PBM Nutritionals. Plaintiff has not alleged how Mr. Holz's alleged conduct caused those "damages"— nor could Plaintiff plausibly make such an allegation given that the financial consideration Plaintiff values was, upon payment to Mr. Holz, his free and clear, no strings attached.

Although Plaintiff's legal theory is effectively one of recoupment, there is no right to recoupment of that financial consideration in the Early Retirement Agreement. Rather, Plaintiffs' remedies for any breach of the confidentiality agreement after his receipt of the financial

consideration are limited to, at most, foreseeable damages caused by Mr. Holz's alleged breach and injunctive relief or specific performance, as set forth in Section 13 of the Early Retirement Agreement. (*See* Compl. at Ex. B, § 13.)

Section 13 of the Early Retirement Agreement does contain a provision that would have resulted in Mr. Holz's forfeiture of any unpaid financial consideration upon a breach of the Early Retirement Agreement preceding payment,[20] but the allegations in Plaintiff's Complaint pertain only to Mr. Holz's conduct after having received the financial consideration. Plaintiff is, therefore, without any forfeiture or recoupment remedy.

Had Plaintiff intended to provide itself a right of recoupment, it certainly could have negotiated and drafted such a provision into the Early Retirement Agreement—and likely would have had to pay more financial consideration in order to persuade participants in the voluntary retirement program to accept it. As reflected in its SEC filings, Plaintiff has, more recently, amended certain of its plan documents to include such a recoupment remedy,[21] but Plaintiff cannot, years after negotiating the Early Retirement Agreement, re-write that agreement, nor can it state a claim for breach of contract in the absence of specific damages and the causation of those damages by Mr. Holz. *See Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-cv-10021, 2018 WL 2268332, at

---

[20] (*See* Compl. at Ex. B, § 13 ("In the event of default by Employee in complying with the terms of this Agreement and those incorporated by reference, as a partial remedy to the Company, ***the Company shall have the right to terminate payment of any Severance Pay and Severance Benefits owing to or that may become owing to Employee*** under the Policy…") (emphasis added).)

[21] (*See* Perrigo Company plc 2019 Long-Term Incentive Plan (relevant portions of which are attached hereto as Ex. "3") at pp. 20-21, § 16(j). (a full copy of which is *available at* https://www.sec.gov/Archives/edgar/data/1585364/000119312519127436/d736580dex101.htm). ) The terms of Plaintiff's 2019 Long-Term Incentive Plan are nevertheless inapplicable to Mr. Holz and to the severance payments and benefits he received under the Early Retirement Agreement.

*2 (E.D. Mich. May 17, 2018) ("The court need not decide whether Defendants improperly 'promoted' or 'advertised' Plaintiffs' products through maintenance of the website because Plaintiffs have shown no harm from the alleged breach—an essential element of their breach of contract claim."); *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 608 (E.D. Mich. 2015) ("There is an additional roadblock plaintiff has not overcome—damages. Michigan law requires proof of damages resulting from the breach of contract. In plaintiff's proposed conclusions of law addressing the breach of contract claim, it does not mention damages at all. The only mention of damages is in plaintiff's argument that it will suffer irreparable harm because of a loss of 'customer goodwill.' Aside from this conclusory statement, plaintiff does nothing to show how its customer goodwill has been affected by defendant's actions.") (internal citations omitted).

For the foregoing reasons, Mr. Holz respectfully requests that this Court dismiss Plaintiff's Complaint under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendant Robert Holz respectfully requests that the Court enter an Order in the form attached hereto dismissing Plaintiff's Complaint.

SILVER & VAN ESSEN, P.C.
Attorneys for Defendant

Date: November 13, 2020                    By: /s/ Lee T. Silver
                                               Lee T. Silver (P36905)

BUSINESS ADDRESS AND TELEPHONE:
300 Ottawa Avenue, NW, Suite 620
Grand Rapids, MI 49503
(616) 988-5600
ltsilver@silvervanessen.com

27

BLANK ROME LLP
Attorneys for Defendant

Jason E. Reisman (*pro hac vice* admission pending)
Kevin M. Passerini (*pro hac vice* admission pending)
BUSINESS ADDRESS AND TELEPHONE:
One Logan Square
Philadelphia, PA 19103
(215) 569-5466
jreisman@blankrome.com
passerini@blankrome.com