**Exhibit "1"**

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| PERRIGO COMPANY PLC, | Case No. 1:20-cv-00612 |
| Plaintiff, | |
| v. | **ELECTRONICALLY FILED** |
| ROBERT HOLZ, | |
| Defendant. | |

## DECLARATION OF ROBERT HOLZ

I, Robert Holz, pursuant to 28 U.S.C. § 1746, declare based on my personal knowledge and information available to me as follows:

1. I currently reside in Chester County, Pennsylvania, and I resided in Chester County, Pennsylvania throughout my employment with PBM Nutritionals (d/b/a Perrigo Nutritionals). I was in Pennsylvania at the time I was served with the Complaint and Summons in this matter through my counsel, Jason Reisman, who resides in Pennsylvania.

2. I first became employed by PBM Nutritionals in 2010, bringing with me nearly two decades of experience in the infant formula industry.

3. In my initial role with PBM Nutritionals as Vice President, I was responsible for international infant formula sales, including in Europe, the Middle East, and Africa. In the fall of 2013, I was promoted to Vice President for Commercial Operations – International Nutrition. In that role, I was responsible for international sales of PBM Nutritional's infant formula for customers who exported and sold the products to foreign markets, including Europe, the Middle East, Africa, Asia, Australia, Central America, and South America.

4. Throughout my employment with PBM Nutritionals, I worked remotely from Chester County, Pennsylvania, although I did make monthly trips to the base of PBM Nutritionals' operations in Virginia. The PBM Nutritionals base in Virginia included general management, finance, legal, U.S. sales and marketing, regulatory, clinical/medical, and human resources functions that supported the nutritionals business.

5. In my Vice President roles with PBM Nutritionals, I reported to the General Manager of PBM Nutritionals in Virginia, and all of my reports resided and worked for PBM Nutritionals in Virginia, except for one individual I managed who resided in Shanghai, China.

6. In my role as Vice President of Commercial Operations – International Nutrition, I traveled abroad regularly and was in contact with customers outside of the State of Michigan and internationally including, for instance, a South Carolina business named Quality of Life Brands ("QLB"). I also traveled to PBM Nutritionals' base in Virginia on a monthly basis, in general, and to the nutritionals manufacturing facility in Vermont two or three times a year, to the nutritionals manufacturing facility in Ohio once or twice total, and on a few occasions to offices in the United Kingdom. I rarely traveled to the State of Michigan, nor did I have any need to travel to Michigan given that the nutritionals business was based out of Virginia. None of the customers I supported were based in the State of Michigan.

7. I remained employed by PBM Nutritionals through the termination of my employment in July 2017, when I elected to participate in Perrigo Company plc's early retirement program. In connection with the early retirement program, I was required to sign what Plaintiff has defined as the "Early Retirement Agreement," which, among other things, included confidentiality obligations.

8. After signing the Early Retirement Agreement, I received severance pay and severance benefits under the "Perrigo U.S. Severance Policy" then in effect. Plaintiff presented me with the Early Retirement Agreement by mail to my home address in Chester County, Pennsylvania, and I then signed the Early Retirement Agreement.

9. Among other things, I agreed in the Early Retirement Agreement to abide by the terms of the Confidentiality Agreement (which was incorporated in its entirety into the Early Retirement Agreement) as well as the parallel confidentiality provisions contained in the Severance Policy.

10. After I executed the Early Retirement Agreement, Plaintiff paid me the severance payments and benefits set forth in the Early Retirement Agreement, consisting of two payments totaling $310,030.32. In addition, under the Early Retirement Agreement, I was treated as a retired employee for purposes of the company's Long-Term Incentive Plan, resulting in the vesting of the Restricted Stock Units ("RSUs") I had received during my employment and their conversion to common stock in Perrigo Company plc.

11. All of the financial consideration I received in exchange for my willingness to participate in the voluntary separation program under the Early Retirement Agreement was paid to me in the Commonwealth of Pennsylvania and deposited into accounts held by me in Pennsylvania. I understood that the Early Retirement Agreement did not provide for the recoupment of any of the financial consideration I was to receive under it (*i.e.*, the severance or severance benefits).

12. Upon termination of my employment, I returned all property of PBM Nutritionals, including any devices and files, and I no longer had any access to any of PBM Nutritional's confidential information.

13. During all periods in which Plaintiff claims that I somehow used or disclosed Plaintiff's confidential information, including during my brief consulting role with QLB, I was residing in the Commonwealth of Pennsylvania. Phone and email communications I had with QLB during that time would have occurred in the Commonwealth of Pennsylvania. At no time following the termination of my employment with PBN Nutritionals was I present in the State of Michigan.

14. Since the termination of my employment with PBM Nutritionals, I have not held any full-time employment and have limited income and resources. And while I have served in a brief, freelance role as a consultant for QLB with respect to the sale of its infant formula in China and with respect to PBM Nutritionals' termination of its supply agreement with QLB, the extent of the financial consideration I received from QLB related to those consulting services was $2,100, and that money was paid to me in a single payment in Pennsylvania and deposited into accounts in Pennsylvania.

15. In the event this litigation were to proceed, the documents and witnesses relevant to Plaintiff's breach of contract claim in the Complaint and my defenses to it are located predominantly in Pennsylvania, as that is where I reside, but also in South Carolina—where QLB and its representatives are located and Virginia—where representatives of PBM Nutritionals and related documents reside—and where counsel for QLB and PBM Nutritionals in the QLB litigation filed in Charlottesville, Virginia and documents related to the litigation between QLB and PBM Nutritionals and my consulting relationship with QLB reside.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

_____
ROBERT HOLZ

Dated: November 13, 2020